# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT ASHLAND

| | |
|---|---|
| **WILLIAM P. STAFFORD JR.,** <br> **Plaintiff,** <br><br> V. <br><br> **COMMISSIONER OF SOCIAL SECURITY** <br> **Defendants.** | **CIVIL ACTION NO. 0:16-CV-00095-KKC** <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff William P. Stafford Jr. and Defendant Commissioner of Social Security. (DE 16 & 18.) Stafford brought this action under Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record, will affirm the Commissioner's decision.

## I. OVERVIEW OF THE PROCESS

To determine whether a claimant has a compensable disability under the Social Security Act, the administrative law judge ("ALJ") applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 81 F.3d 825, 835 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps, in summary, are:

*Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.

*Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

*Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

*Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

*Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process the claimant bears the burden of proof. *Sorrell*, 656 Fed. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (internal citations omitted); 20 C.F.R. § 404.1520(g)(1).

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Background

William Stafford was born in 1965. (Administrative Record ("AR") 171.) He is not currently married and lives with extended family. (AR 34.) He has a high school education but no

additional vocational training. (AR 35.) His past work experience was as a dump truck and semi tractor-trailer driver. (AR 58.) He alleges that he is unable to work due to heart trouble, diabetes, neuropathy, and anxiety and depression, as well as shortness of breath, leg pain, and difficulty sitting. (AR 43, 242, 246.)

Stafford filed for Disability Insurance Benefits and Social Security Income on April 24, 2013 alleging a disability onset date of March 18, 2013. (AR 167, 171.) Those claims were denied initially and on reconsideration. (AR 64-91, 99-106.) Stafford then filed a timely request for a hearing before an ALJ. (AR 107-08.) ALJ John M. Dowling conducted a hearing in St. Louis, Missouri on January 14, 2015 (AR 29-30.) Stafford, accompanied by his attorney, appeared at the hearing via video teleconference from Huntington, West Virginia and testified on his own behalf. (AR 30-31, 33-57.) Testimony was also heard from an impartial vocational expert, Ray Burger. (AR 27-28, 57-61.) After hearing and reviewing Stafford's claims *de novo*, the ALJ entered a written decision denying benefits on February 17, 2015. (AR 9-28.)

B.  The Administrative Decision

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, *see* 20 C.F.R § 404.1520, and found that Stafford's claim failed at step five. At step one, the ALJ found Stafford had not engaged in substantial gainful activity since the alleged onset date. (AR 14.) At step two, the ALJ found that Stafford had the following severe impairments: disorders of the cardiovascular system, hypertension, diabetes, obesity, and hyperlipidemia. (AR 14.) At step three, the ALJ found that these impairments or a combination therefore did not meet or medically equal the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, App. 1.[1] With regard to the physical listings, he explained "there was no indication that [Stafford's] impairments caused any deficits that was severe enough to meet or equal any of the respective listings" and added that Stafford "did not have serious limitations in his ability to sit, stand, walk or using his extremities such that he would satisfy . . . any of the relevant listings." The ALJ also found that Stafford's cardiovascular issues were not of the type or severity to meet or equal an applicable listing. (AR 15.)

Before proceeding to step four, the ALJ determined Stafford's residual functional capacity (RFC). The ALJ found that Stafford, based on all of his impairments, retained the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 4.16.967(a) except that he can never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs, occasionally stoop, an frequently kneel, crouch, or crawl. In addition he must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, irritants such as fumes, odors, dust, gases, and poorly ventilated areas. In addition, he must avoid all exposure to unprotected heights and hazardous machinery.

(AR 15.) Moving to step four, the ALJ found that Stafford was unable to perform any of his past relevant work. (AR 22.) At the final step, the ALJ, considering Stafford's age, education, work experience, and RFC, found that there were significant numbers of jobs in the national economy that Stafford could perform. (AR 22.) The ALJ accepted the vocational expert's testimony that, given Stafford's sedentary exertional capacity and additional limitations, he could perform work as a hand packager or assembler. (AR 22, 59.) Accordingly, the ALJ entered a finding of not disabled for the period of March 18, 2013 through February 17, 2015, the date of the written decision. (AR 23.)

### III.   STANDARD OF REVIEW

---

[1] The SSA modified the listing criteria for mental disorders in January 2017. All subsequent citations to 20 C.F.R. Pt. 404, Subpart. P, App. 1 refer to the version of the regulation in effect at the time of Stafford's SSA-benefits application and the ALJ's decision.

Under the Social Security Act, the Court conducts a limited review of the Commissioner's decision. 42 U.S.C. § 405(g). The Court may only evaluate whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers*, 582 F.3d at 651. Substantial evidence means "more than a scintilla of evidence but less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In assessing the ALJ's decision, the Court cannot "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id.*; *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

## IV. ANALYSIS

A. <u>First Assignment of Error: Whether the ALJ Failed to Adequately Explain his Determination at Step Three</u>

Stafford first argues that the ALJ committed reversible error at step three by improperly evaluating whether Stafford's impairment met or medically equaled a listed impairment. He alleges that the ALJ failed to consider the elements contained in the listings, instead applying his own "ambiguous standard," and did not provide adequate reasons for explaining why Stafford did not meet or equal a Listing. Stafford then argues that medical evidence raises a substantial question as to whether Listing 4.04 (ischemic heart disease) and 4.05 (recurrent arrhythmias) were met.

Because the ALJ failed to explicitly discuss Listing 4.04 and 4.05 in his written opinion, this Court must determine whether the record evidence raises a substantial question as to each requirement of the Listings. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 433 (6th Cir. 2014). However, Stafford bears the burden to prove that he has an impairment that meets or medically equals a Listing. *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. App'x 405, 411 (6th Cir. 2004). To meet his burden, Stafford "must present specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to a listed impairment." *Id.* (citing *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001)). If there is a lack of evidence indicating the existence of all requirements of a listed impairment the ALJ's determination was supported by substantial evidence. *Id* (citing *Hale v. Sec'y of HHS*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

Listing 4.04 is met if there is evidence of "ischemic heart disease, with symptoms due to myocardial ischemia . . . while on a regiment of prescribed treatment" plus one of the following: (A) an exercise tolerance test demonstrating a specified manifestation, (B) three separate ischemic episodes, each requiring revascularization, within a 12-month period, or (C) coronary artery disease evidenced by medical imaging and where the patient is unable to perform an exercise tolerance test. 20 C.F.R. Part 404, Subpart P, App. 1 §4.04. In his Motion for Summary Judgment, Stafford recounts much of the medical history related to his cardiac problems. (DE 16 at 7-9.) He then claims that this evidence shows that Listing "4.04 has been met by documenting persistent symptoms due to myocardial ischemia despite medication." (DE 9.) But, even assuming that the record evidence establishes this claim, Stafford has not raised a substantial question as to Listing 4.04 because he has not shown he met one of the three additional criteria listed in § 4.04(A)-(C). Stafford, not the Commissioner, bears the burden at this stage to show

that Listing 4.04 is met. *See Lusk*, 579 Fed App'x at 433. Yet Stafford has not pointed to any evidence that suggests he meets the criteria of 4.04(A)-(C). Furthermore, examining the record, the Court finds that Stafford does not meet any of the additional criteria of Listing 4.04. Stafford did not undergo an exercise tolerance test that demonstrates one of the enumerated manifestations. He has not suffered three ischemic episodes requiring revascularization in a twelve-month period. And he is not unable to perform an exercise tolerance test, as he underwent a stress test in 2007. (AR 573.) Because there is not record evidence that Stafford met all of the diagnostic criteria for Listing 4.04, the Court finds that the ALJ's decision that Stafford did not meet Listing 4.04 was supported by substantial evidence.

Stafford also argues that he has met Listing 4.05 because there is "evidence of uncontrolled and reoccurring cardiac events despite medication." But, again, Stafford has failed to raise a substantial question as to whether he met the Listing because he has not established that he meets all of the Listings diagnostic criteria. Listing 4.05 requires recurrent arrhythmias, not related to a reversible cause, resulting in uncontrolled recurrent episodes of cardiac syncope or near syncope. 20 C.F.R. Pt. 404, Subpart P., App. 1 § 4.05. Stafford has not alleged, and there is no medical evidence in the record that suggests, he suffered recurrent episodes of syncope or near syncope.[2] Stafford's medical records show a history of treatment for cardiac problems with symptoms such as shortness of breath. There is no record evidence of loss of consciousness, fainting, or altered consciousness. Accordingly, Stafford has not shown that he meets all of the diagnostic criteria of Listing 4.05. Because there is no record evidence that Stafford suffered from syncope or near syncope, the ALJ's determination at step three was supported by substantial evidence.

---

[2] Syncope is a "loss of consciousness or a faint" and near syncope is a "period of altered consciousness . . . not merely a feeling of light-headedness, momentary weakness, or dizziness." 20 C.F.R. Pt. 404, Subpart P., App. 1 § 4.00(F)(3)(b).

B.  <u>Second Assignment of Error: The ALJ Violated the Treating Source Rule</u>

Stafford's second argument is that the ALJ improperly discounted the opinion of his treating physician, Dr. Ben Odell. He asserts that the ALJ gave only a "cursory rationale [] not supported by the record" for why the Dr. Odell's opinion was not entitled to the most weight.

The Social Security regulations classify medical opinions into three categories: treating sources, examining (but non-treating) sources, and non-examining sources. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1502). Generally, the opinion of a claimant's treating source is given the most weight. 20 C.F.R. § 404.1527(c) ("Generally, we give more weight to medical opinions from your treating sources . . . ."); *see Ealy*, 594 F.3d at 514 (The Social Security Administration gives the most weight to opinions from a claimant's treating source . . . ."). A treating source is entitled to controlling weight when the opinion is "well-supported by clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). When a treating source is not entitled to controlling weight, the ALJ must determine the appropriate weight the opinion is entitled to by considering a number of factors. [3] *Id.* Furthermore, under the "good reasons rule," the ALJ is always required to give good reasons for the weight given to the treating source's opinion. *Id.* These "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

---

[3] These factors include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. 20 C.F.R. § 404.1527(c)(2)(i)-(ii); *see also Reeves v. Comm'r of Soc. Sec*, 618 Fed. App'x. 267, 273 (6th Cir. 2015) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

weight." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009) (quoting SSR 96-2P, 1996 WL 374188 (July 2, 1996) (internal quotation marks omitted)).

The ALJ supplied good reasons for the weight he gave to the treating source opinion of Dr. Odell. In his written opinion, the ALJ found that Dr. Odell's opinion "was not particularly credible, and was entitled to little weight. (AR 19.) The ALJ supported this reason with substantial evidence from the record. First, the ALJ noted that Dr. Odell's opinion indicated that Stafford had "a range of extreme and profound deficits in every domain" that was inconsistent with his treatment records. (AR 19.) This conclusion was reasonable. Dr. Odell's treatment record stated that Stafford could walk less than one city block, could sit for only ten minutes and stand for only five minutes at one time, sit and stand/walk for less than 2 hours in a eight hour working day, never lift weight, and was not able to work with his hands or wrists. (AR 907-11.) In contrast, during his hearing, Stafford testified that he drove to the hearing, could sit for "probably about 40, 45 minutes" before needing to stand up and stretch, could lift eight to ten pounds, and was able to wash his undergarments and prepare sandwiches and soup. (AR 35, 47, 53, 55.) Furthermore, as the ALJ noted, the record did not support Dr. Odell's assessment that Stafford could not work with his hands because there was "essentially no evidence [of] any substantive deficits with his upper extremities anywhere in the objective record." (AR 20.) Second, the ALJ noted that Dr. Odell's assessment that Stafford had extreme limitations was inconsistent with his conservative treatment regime. (AR 20.) And third, the state agency medical consultant, Dr. Saranga, disagreed with Dr. Odell's assessment and found that Stafford could perform restricted light work. (AR 20.)

Stafford argues that it was not proper to rely on Dr. Saranga's opinion in discrediting Dr. Odell's medical opinion because Dr. Saranga had access to only a limited portion of the medical

record. Dr. Saranga reviewed the record in November 2013 and therefore did not have access to five medical exhibits that were developed from 2013 to 2014. This argument is misguided. The ALJ considered Dr. Saranga's opinion in light of the record as a whole. With regard to Stafford's physical condition, the ALJ found the opinion to only be partially credible because, in part, "[u]pdated medical evidence . . . indicated that he would be unable to do anything other than sedentary type work." (AR 19.) Accordingly, the ALJ properly considered the weight and supportability of the state agency medical consultant's opinion with respect to the record as a whole, including evidence submitted after his review. *See* SSR 96-6p, 1996 WL 374180 (July 2, 1996) ("[T]he opinions of State agency medical . . . consultants . . . can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency . . . ."). Stafford contends that because the state agency medical doctor was unable to review portions of the record that the ALJ improperly took on the role of doctor. This argument has no merit. The issue of a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). Accordingly, the ALJ must consider both the medical opinions and other evidence in the record in making his RFC assessment. *Id.* Where evidence is inconsistent, the ALJ must "consider the relevant evidence and see if [he] can determine whether [the claimant is] disabled based on the evidence" on the record. 20 C.F.R § 404.1520(b)(1). That is what the ALJ did here. Finding that the opinions of Dr. Saranga and Odell were, in part, inconsistent with each other and the objective medical evidence on record, the ALJ assessed the credibility of each opinion and made his own determination as to Stafford's RFC.

Finally, in his reply, Stafford argues that the state agency consultant's opinion does not constitute substantial evidence (DE 19-5.). This argument also fails. As explained above, the ALJ only gave Dr. Saranga's opinion partial credibility in relation to Stafford's physical health. In assessing Stafford's RFC and determining that Dr. Odell's opinion was entitled to little weight, the ALJ relied on more than Dr. Saranga's opinion. The ALJ specifically cited to inconsistencies between Dr. Odell's findings and Stafford's statements at his hearing. This constituted substantial evidence for discounting Dr. Odell's opinion. Accordingly, the ALJ did not err in failing to give good reasons for not giving the opinion of Dr. Odell controlling weight.

## V. CONCLUSION

For the reasons set forth above, the Court herby **ORDERS** as follows:

1. Plaintiff's motion for summary judgement (DE 16) is **DENIED**;

2. The Commissioner's motion for summary judgement (DE 18) is **GRANTED;**

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgement consistent with this Opinion & Order will be entered contemporaneously.

Dated September 27, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY